UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

NICHOLAS WILLIAM SPOORES,

    Plaintiff,

v.                                                                   Case No. 1:17-cv-890
                                                                     Hon. Ray Kent

COMMISSIONER OF SOCIAL
SECURITY,

    Defendant,
_____/

**OPINION**

Plaintiff brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of a final decision of the Commissioner of Social Security Administration (Commissioner) which denied his claim for disability insurance benefits (DIB) and supplemental security income (SSI).

Plaintiff alleged a disability onset date of November 22, 2012. PageID.229. Plaintiff identified his disabling conditions as heart failure, aggressive chronic coronary artery disease, and anxiety. PageID.232. Prior to applying for DIB and SSI, plaintiff completed one year of college and performed the following work: lubrication servicer; shipping and receiving clerk; molding machine tender; assembly machine tender; hand packer (and as a composite job, industrial truck operator); and assembly machine tender. PageID.49, 233. An administrative law judge (ALJ) reviewed plaintiff's claim *de novo* and entered a written decision denying benefits on June 30, 2016. PageID.41-51. This decision, which was later approved by the Appeals Council, has become the final decision of the Commissioner and is now before the Court for review.

1

## I. LEGAL STANDARD

This Court's review of the Commissioner's decision is typically focused on determining whether the Commissioner's findings are supported by substantial evidence. 42 U.S.C. § 405(g); *McKnight v. Sullivan*, 927 F.2d 241 (6th Cir. 1990). "Substantial evidence is more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip v. Secretary of Health & Human Services*, 25 F.3d 284, 286 (6th Cir. 1994). A determination of substantiality of the evidence must be based upon the record taken as a whole. *Young v. Secretary of Health & Human Services*, 925 F.2d 146 (6th Cir. 1990).

The scope of this review is limited to an examination of the record only. This Court does not review the evidence de novo, make credibility determinations or weigh the evidence. *Brainard v. Secretary of Health & Human Services*, 889 F.2d 679, 681 (6th Cir. 1989). The fact that the record also contains evidence which would have supported a different conclusion does not undermine the Commissioner's decision so long as there is substantial support for that decision in the record. *Willbanks v. Secretary of Health & Human Services*, 847 F.2d 301, 303 (6th Cir. 1988). Even if the reviewing court would resolve the dispute differently, the Commissioner's decision must stand if it is supported by substantial evidence. *Young*, 925 F.2d at 147.

A claimant must prove that he suffers from a disability in order to be entitled to benefits. A disability is established by showing that the claimant cannot engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. *See* 20 C.F.R. §§ 404.1505 and 416.905; *Abbott v. Sullivan*, 905

F.2d 918, 923 (6th Cir. 1990). In applying the above standard, the Commissioner has developed a five-step analysis:

> The Social Security Act requires the Secretary to follow a "five-step sequential process" for claims of disability. First, plaintiff must demonstrate that she is not currently engaged in "substantial gainful activity" at the time she seeks disability benefits. Second, plaintiff must show that she suffers from a "severe impairment" in order to warrant a finding of disability. A "severe impairment" is one which "significantly limits . . . physical or mental ability to do basic work activities." Third, if plaintiff is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment meets a listed impairment, plaintiff is presumed to be disabled regardless of age, education or work experience. Fourth, if the plaintiff's impairment does not prevent her from doing her past relevant work, plaintiff is not disabled. For the fifth and final step, even if the plaintiff's impairment does prevent her from doing her past relevant work, if other work exists in the national economy that plaintiff can perform, plaintiff is not disabled.

*Heston v. Commissioner of Social Security*, 245 F.3d 528, 534 (6th Cir. 2001) (citations omitted).

The claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work through step four. *Jones v. Commissioner of Social Security*, 336 F.3d 469, 474 (6th Cir. 2003). However, at step five of the inquiry, "the burden shifts to the Commissioner to identify a significant number of jobs in the economy that accommodate the claimant's residual functional capacity (determined at step four) and vocational profile." *Id.* If it is determined that a claimant is or is not disabled at any point in the evaluation process, further review is not necessary. *Mullis v. Bowen*, 861 F.2d 991, 993 (6th Cir. 1988).

"The federal court's standard of review for SSI cases mirrors the standard applied in social security disability cases." *D'Angelo v. Commissioner of Social Security*, 475 F. Supp. 2d 716, 719 (W.D. Mich. 2007). "The proper inquiry in an application for SSI benefits is whether the plaintiff was disabled on or after her application date." *Casey v. Secretary of Health and Human Services*, 987 F.2d 1230, 1233 (6th Cir. 1993).

## II. ALJ's DECISION

Plaintiff's claim failed at the fifth step of the evaluation. At the first step, the ALJ found that plaintiff had not engaged in substantial gainful activity since the alleged onset date of November 22, 2012, and that he met the insured status of the Social Security Act through September 30, 2018. PageID.43.

At the second step, the ALJ found that plaintiff had severe impairments of: coronary artery disease (CAD), status-post stenting and catheterizations, and status-post myocardial infarction; obesity; depression; and anxiety. PageID.43. At the third step, the ALJ found that plaintiff did not have an impairment or combination of impairments that met or equaled the requirements of the Listing of Impairments in 20 C.F.R. Pt. 404, Subpt. P, App. 1. PageID.43.

The ALJ decided at the fourth step that:

> After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) except he can occasionally climb ramps and stairs; never climb ladders, ropes, or scaffolds; occasionally stoop, kneel, crouch, and crawl; have frequent exposure to extreme cold, extreme heat, humidity, and pulmonary irritants; perform simple, routine, repetitive tasks; have occasional contact with the public, co-workers, and supervisors.

PageID.45. The ALJ also found that plaintiff was not capable of performing any past relevant work. PageID.49.

At the fifth step, the ALJ found that plaintiff could perform a significant number of unskilled jobs at the sedentary exertional level. PageID.50. Specifically, the ALJ found that plaintiff could perform the requirements of sedentary and unskilled occupations in the national economy such as packager (40,000 jobs), inspector (58,000 jobs), and office clerical (140,000 jobs). PageID.50-51. Accordingly, the ALJ determined that plaintiff has not been under a

disability, as defined in the Social Security Act, from November 22, 2012 (the alleged onset date) through June 30, 2016 (the date of the decision). PageID.51.

### III. DISCUSSION

Plaintiff set forth one issue (with sub-issues) on appeal:

**The ALJ's residual functional capacity (RFC) findings are not supported by substantial evidence as required under 20 C.F.R. §§ 404.1520a and §404.1545, and SSR 98-6p.**

**A. The ALJ failed to give proper weight to the findings and opinion of plaintiff's treating cardiologist, as required by 20 C.F.R. §404.1527(c); §416.927(c).**

**1. The ALJ failed to give Dr. Kamath's opinions proper weight and failed to address Dr. Kamath's opinions using the criteria required in 20 C.F.R. §404.1527(c); §416.927(c).**

A treating physician's medical opinions and diagnoses are entitled to great weight in evaluating plaintiff's alleged disability. *Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir. 2001). "In general, the opinions of treating physicians are accorded greater weight than those of physicians who examine claimants only once." *Walters v. Commissioner of Social Security*, 127 F.3d 525, 529-30 (6th Cir. 1997). "The treating physician doctrine is based on the assumption that a medical professional who has dealt with a claimant and his maladies over a long period of time will have a deeper insight into the medical condition of the claimant than will a person who has examined a claimant but once, or who has only seen the claimant's medical records." *Barker v. Shalala*, 40 F.3d 789, 794 (6th Cir. 1994). *See* 20 C.F.R. §§ 404.1527(c)(2) and 416.927(c)(2) ("Generally, we give more weight to opinions from your treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be

obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations").

Under the regulations, a treating source's opinion on the nature and severity of a claimant's impairment must be given controlling weight if the Commissioner finds that: (1) the opinion is well-supported by medically acceptable clinical and laboratory diagnostic techniques; and (2) the opinion is not inconsistent with the other substantial evidence in the case record. *See Gayheart v. Commissioner of Social Security*, 710 F.3d 365, 375 (6th Cir. 2013); 20 C.F.R. §§ 404.1527(c)(2) and 416.927(c)(2). Finally, the ALJ must articulate good reasons for not crediting the opinion of a treating source. *See Wilson v. Commissioner of Social Security*, 378 F.3d 541, 545 (6th Cir. 2004); 20 C.F.R. §§ 404.1527(c)(2) and 416.927(c)(2) ("[w]e will always give good reasons in our notice of determination or decision for the weight we give your treating source's opinion").

Plaintiff alleged a disability onset date of November 22, 2012. PageID.229. The ALJ noted that plaintiff had a number of procedures performed prior to that date. In April 2008, plaintiff had a left heart catheterization with angioplasty and stent placement, and in March 2012 he had a catheterization. PageID.46. Shortly after the last procedure, plaintiff began a new full-time job as a general laborer working 10-hour days. PageID.46. Plaintiff indicated that he stopped working that job in November 2012 because of his impairments. PageID.46. While plaintiff alleged a disability onset date of November 22, 2012, he did not require additional significant treatment until several months later, with another left heart catheterization revascularization and stent placement in July 2013. PageID.46. Plaintiff did not have another procedure until about three years later. In September 2013, plaintiff reported that he was feeling well and without chest pain. PageID.46. In November 2013, he reported occasional chest pain brought on by exertion,

6

but had a normal physical examination. PageID.46. In May 2014, plaintiff reported that he was doing well. PageID.46. In September 2015, he had a normal physical examination and denied significant episodes of chest pain. PageID.46-47. However, in about April 2016 plaintiff reported chest discomfort, and had another left heart catheterization with angioplasty in May 2016. PageID.47.

The ALJ acknowledged that plaintiff had multiple procedures, but recognized that throughout these episodes plaintiff could still perform sedentary work:

> [D]espite his long history of CAD, which was complicated by his hypertension and hyperlipidemia, the claimant had large gaps in noteworthy treatment. Except during the brief periods when he underwent his procedures, he reported rather limited symptoms during his rather inconsistent appointments with a cardiologist, and his physical examinations were normal. Moreover, other than his procedures, after which the evidence showed the claimant recovered quickly, his overall care was only routine and very conservative in nature. Accordingly, while the claimant's impairments can justifiably be found to limit him to the sedentary exertional level, the gap in treatment shows his condition is more manageable than suggested. This is further supported by the limited physical examination findings, and the fact that despite an additional procedure in May 2016, the claimant had a normal ejection fraction.

PageID.47.

On May 13, 2016, Dr. Kamath prepared a cardiac medical source statement. However, this statement expressed few opinions. The doctor identified plaintiff's symptoms as chest pain, exertional dyspnea, chronic fatigue, and "profuse fatigue." PageID.525. The doctor indicated that plaintiff could "rarely" lift 10 pounds, with the questionnaire defining the term "rarely" as "1% to 5% of an 8-hour working day." PageID.527. The doctor stated that most of the questions on the form were not applicable to plaintiff, including: questions regarding angina; questions regarding the treatment, response, and side effects of medication prescribed to plaintiff; questions regarding the role of stress in bringing on plaintiff's symptoms; and questions regarding plaintiff's emotional symptoms. PageID.525-526. It appears that the doctor did not believe that

plaintiff's impairments would have any functional limitations in a competitive work situation, that the impairments would interfere with plaintiff's movement (twisting, stooping, bending, crouching, squatting, climbing stairs or ladders), or that that plaintiff had any environmental limitations (all questions marked "n/a"). PageID.526-527. Notably, the doctor would not answer a key question with respect to qualifying for benefits, i.e., "Have your patient's impairments lasted or can they be expected to last at least twelve months" (marked "n/a"). PageID.526.

The ALJ addressed Dr. Kamath's opinion as follows:

> As for the opinion evidence, Sreenivas Kamath, M.D., a treating cardiologist, opined the claimant could lift 10 pounds rarely [defied [sic] on the form comprising the opinion as 1 to 5 percent of a workday] (Ex 13F). This opinion is given limited weight. Although an overall limitation to lifting 10 pounds is consistent with the evidence, even the claimant's own admission of being able to lift 20 pounds is not constant [sic] with limiting the claimant to lifting 10 pounds for no more than 5 percent of a workday. Moreover, the doctor did not complete the rest of the form, particularly as it related to the claimant's ability to sit, stand, walk, and balance, stoop, kneel, crouch, etc. Rather, the doctor responded, "n/a" to most of the questions on the form. In addition, as already discussed, the claimant had many normal physical examinations and had gaps in treatment without significant [sic], during which he had few reports of severe symptoms except for when he had to have his procedures.

PageID.47-48.

Based on this record, the Court concludes that the ALJ gave good reasons for assigning limited weight to Dr. Kamath's opinion. The doctor provided no narrative to describe the extent of plaintiff's symptoms and did not respond to questions because they were "not applicable." By either rejecting or refusing to state whether plaintiff's impairments would last or can be expected to last 12 months, the doctor's opinion failed to establish that any identified impairments met the durational requirement to qualify as the basis for a disability claim.

While the Court agrees with plaintiff that the ALJ misconstrued plaintiff's testimony with respect to lifting, this is not fatal to the ALJ's decision. Contrary to the ALJ's

8

finding, plaintiff did not admit that he was able to lift 20 pounds. Rather, plaintiff stated in a function report that if he lifts "to[o] heavy of an object (about 20 LBS) get chest pain" and later that "[t]oo much exertion while lifting, squatting (about 25 lbs) . . . causes chest pain & leads to heart attack." PageID.257, 262. Plaintiff's admissions would support a lifting restriction of less than 20 pounds. However, nothing in the record supports Dr. Kamath's restriction that plaintiff can lift only 10 pounds rarely (PageID.527). The ALJ agreed that 20 or 25 pounds is "too heavy" for plaintiff to lift and limited him to sedentary work, which involves lifting no more than 10 pounds at a time. *See* 20 C.F.R § 404.1567(a). Accordingly, plaintiff's claim of error is denied.

### 2. Based on the VE testimony, had the ALJ given proper weight to Dr. Kamath's findings, plaintiff met his burden of showing he could not have performed his past work or any other work.

Plaintiff contends that he is disabled because: Dr. Kamath opined that plaintiff suffered from "profuse fatigue;" plaintiff testified he needs to take frequent naps and suffers from shortness of breath with exertion and chest pain from stress and exertion; and "[t]he VE testified that if [plaintiff] had more than one absence per month, all work would be precluded." Plaintiff's Brief (ECF No. 9, PageID.597-598). As an initial matter, the VE's testimony was not as definitive as plaintiff suggests. The referenced testimony was in response to an ALJ's hypothetical question regarding absenteeism:

> I'm going to add now the hypothetical claimant will be tardy, need to leave work early or otherwise absent three days per month on a regular and ongoing basis.
>
> With those restrictions in mind, could the claimant perform their past work, or in the alternative, any other work in the national economy?

PageID.98. The VE responded as follows:

> No, not in my opinion. And this does need to be an opinion. This is the only variable we've had thus far that's not in the DOT in some manner. And only can be an opinion to begin with. I believe what is acceptable, especially when we're talking about unskilled work might be about one absence per month.

9

> More than that, even if it would become two, certainly three is excessive. Three days a month is – that's almost seven weeks in a year, so there's no competitive employer that's going to allow that for unskilled work.

PageID.98. Based on this testimony, it appears that the VE expressed the opinion that one or two absences a month could be acceptable for competitive employment, but that three absences a month would make a person non-competitive. Dr. Kamath's ambiguous statement that plaintiff suffered from "profuse fatigue" does not establish that plaintiff would miss three days of work per month. The record does not support plaintiff's claim that he is unemployable due to absenteeism arising from his impairments. Accordingly, plaintiff's claim of error is denied.

### B. The ALJ failed to properly address plaintiff's credibility and his findings are not supported by substantial evidence.

Plaintiff contends that the ALJ improperly discounted his credibility, e.g., the ALJ "ignored the fact that cardiac bypass surgery was not recommended for Mr. Spoores' condition." Plaintiff's Brief (ECF No. 9, PageID.598). In addition, the ALJ improperly relied on plaintiff's daily activities. *Id*. The term "credibility" is no longer used by the Commissioner in evaluating claims. *See* Defendant's Brief (ECF No. 10, PageID.613-615). In SSR 16-3p, the agency explained that:

> [W]e are eliminating the use of the term "credibility" from our sub-regulatory policy, as our regulations do not use this term. In doing so, we clarify that subjective symptom evaluation is not an examination of an individual's character.

SSR 16-3p, 2016 WL 1119029 at *1-2 (eff. March 16, 2016).[1] Under this policy, "[a]djudicators must limit their evaluation to the individual's statements about his or her symptoms and the evidence in the record that is relevant to the individual's impairments," and "will not assess an

---

[1] The Court notes that SSR 16-3p was in effect when the ALJ issued plaintiff's decision on June 30, 2016.

individual's overall character or truthfulness in the manner typically used during an adversarial court litigation." *Id*. at *10.

While SSR 16-3p eliminated the use of the term "credibility," the regulatory analysis remains the same. As this Court observed,

> The new policy ruling did not and could not change the underlying regulations. The longstanding two-part analysis for evaluating symptoms applies. 20 C.F.R. § 404.1529(a). "An ALJ must first determine 'whether there is an underlying medically determinable physical impairment that could reasonably be expected to produce the claimant's symptoms.' If such an impairment exists, the ALJ 'must evaluate the intensity, persistence, and limiting effects of the symptoms on the individual's ability to do basic work activities.'" *Morrison v. Commissioner*, 2017 WL 4278378, at *4 (quoting *Rogers v. Commissioner*, 486 F.3d 234, 247 (6th Cir. 2007) ). Relevant factors to be considered in evaluating symptoms are listed in 20 C.F.R. § 404.1529(c)(3). "It is well established that the ALJ is not required to discuss every factor or conduct a factor-by-factor analysis." *Pratt v. Commissioner*, No. 1:12-cv-1084, 2014 WL 1577525, at *3 (W.D. Mich. Apr. 21, 2014) (collecting cases); *see also Carsten v. Commissioner*, No. 15-14379, 2017 WL 957455, at *4 (E.D. Mich. Feb. 23, 2017).

*Palmer v. Commissioner of Social Security*, No. 1:17-cv-577, 2018 WL 4346819 at *6 (W.D. Mich. Aug. 9, 2018), R&R adopted 2018 WL 4334623.

It is well established that evaluation of a claimant's subjective complaints remains peculiarly within the province of the ALJ. *See Gooch v. Secretary of Health & Human Services*, 833 F.2d 589, 592 (6th Cir. 1987). While the term "credibility" is no longer used, this Court must still give deference to the ALJ's evaluation of the symptoms under the regulations, and may not disturb that ALJ's evaluation "absent [a] compelling reason." *See Smith v. Halter*, 307 F.3d 377, 379 (6th Cir. 2001). "[A]side from this linguistic clarification, the analysis under SSR 16-3p otherwise is identical to that performed under SSR 96-7p." *Scobey v. Commissioner of Social Security*, No. 1:17-cv-987, 2018 WL 4658816 at *11 (W.D. Mich. Sept. 28, 2018) (internal quotation marks and brackets omitted).

Here, the ALJ found that plaintiff's allegations of disabling limitations from his CAD were not consistent with the evidence showing large gaps in noteworthy treatment, his own frequent reports of limited symptoms, his history of generally conservative treatment, and normal physical examinations including a normal ejection fraction as of May 2016. PageID.47. The ALJ could properly discount plaintiff's subjective complaints on this basis.

In addition, the ALJ found that plaintiff's "statements concerning the intensity, persistence, and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record." PageID.46. In this regard, the ALJ described plaintiff's daily activities, noting: that plaintiff had no significant problem providing for his own personal care needs; that he cared for pets, cared for his four children, drove, read books, played video games, and prepared meals that he performed household chores such as washing dishes, vacuuming, picking up, and laundry; and that he performed household repairs within his physical limitations. PageID.44. *See, e.g., Pasco v. Commissioner of Social Security*, 137 Fed. Appx. 828, 846 (6th Cir. 2005) (substantial evidence supported finding that plaintiff was not disabled where plaintiff could "engage in daily activities such as housekeeping, doing laundry, and maintaining a neat, attractive appearance" and could "engage in reading and playing cards on a regular basis, both of which require some concentration") (footnote omitted); *Bogle v. Sullivan*, 998 F.2d 342, 348 (6th Cir. 1993) (a claimant's ability to perform household and social activities on a daily basis is contrary to a finding of disability); *Gist v. Secretary of Health and Human Services*, 736 F.2d 352, 358 (6th Cir. 1984) (a claimant's capacity to perform daily activities on a regular basis will militate against a finding of disability). Based on this record, the Court finds no compelling reason to disturb the ALJ's evaluation of plaintiff's symptoms. Accordingly, this claim of error is denied.

### C. The RFC finding did not adequately address all of plaintiff's well-documented impairments

The ALJ summarized Dr. Daniel's opinions as follows:

> Shanthini Daniel, M.D., a State agency medical consultant, opined the claimant could lift and/or carry 20 pounds occasionally and 10 pounds frequently, but only stand/walk for two hours in an eight-hour workday. The claimant could never climb ladders, ropes, or scaffolds, frequently balance and climb ramps and stairs, and occasionally stoop, kneel, crouch, and crawl. Finally, the claimant had to avoid concentrated exposure to extreme cold, extreme heat, vibration, and pulmonary irritants (Ex 1A and 2A).

PageID.48. The ALJ gave Dr. Daniel's opinions partial weight:

> I give Dr. Daniel's opinion partial weight. Although the doctor's opinion essentially puts the claimant at sedentary exertion because of the limitation to standing and walking, the record showed that despite a long period without significant treatment or reported symptoms, the claimant nevertheless required another procedure in 2016. Accordingly, the evidence submitted at the hearing level showed the claimant was somewhat more limited than determined by Dr. Daniel.

PageID.48.

Plaintiff contends that the environmental limitations set forth in the RFC should have been more restrictive than those given by Dr. Daniel, because the ALJ found plaintiff "somewhat more limited" than the doctor. PageID.48. The Court, however, cannot evaluate this claim of error because the ALJ did not identify which limitations he accepted and which limitations he rejected.[2] While it is unnecessary for the ALJ to address every piece of medical evidence, *see Heston*, 245 F.3d at 534-35, an ALJ "must articulate, at some minimum level, his analysis of the evidence to allow the appellate court to trace the path of his reasoning." *Diaz v. Chater*, 55 F.3d

---

[2] The Court is not persuaded by defendant's contention that "any error is at most harmless" because "[n]one of the jobs the ALJ relied on at step five, based on the vocational expert's testimony, requires any exposure to weather, extreme cold or heat, wetness or humidity, vibration, atmospheric conditions, or toxic caustic chemicals at all." Defendant's Brief (ECF No. 10, PageID.611-612 (footnote omitted)). The ALJ listed three occupations which plaintiff could perform based on the VE's testimony: packager (DOT No. 559.687-014); inspector (DOT No. 669.687.014); and office clerical (DOT No. 209.587-010). PageID.50-51. In her brief, defendant identified three different occupations with the same DOT numbers: ampoule sealer (559.687-014); dowel inspector; (669.687.014); and addresser (209.587-010). PageID.612. It would appear that defendant disagrees with the occupations identified by the VE and indicates that the VE's findings are not consistent with the DOT. Defendant's cursory argument provides no explanation for the discrepancy between the occupations identified by the VE and the occupations identified in her brief.

13

300, 307 (7th Cir. 1995). "It is more than merely 'helpful' for the ALJ to articulate reasons . . . for crediting or rejecting particular sources of evidence. It is absolutely essential for meaningful appellate review." *Hurst v. Secretary of Health and Human Services*, 753 F.2d 517, 519 (6th Cir. 1985). Here, the Court cannot trace the path of the ALJ's reasoning with respect to the environmental limitations set forth in the RFC. Accordingly, this matter will be reversed and remanded pursuant to sentence four of 42 U.S.C. § 405(g). On remand, the Commissioner should re-evaluate plaintiff's RFC with respect to the environmental limitations.

### IV. CONCLUSION

For these reasons, the Commissioner's decision will be **REVERSED** and **REMANDED** pursuant to sentence four of 42 U.S.C. § 405(g). On remand, the Commissioner is directed to re-evaluate plaintiff's RFC with respect to the environmental limitations. A judgment consistent with this opinion will be issued forthwith.


Dated: March 27, 2019                /s/ Ray Kent
                                     United States Magistrate Judge